ELLIOTT & WATROUS, INC. *vs.* RANDALL A. HARRINGTON, JR.

JULY 17, 1942.

PRESENT: Flynn, C. J., Moss, Baker and Condon, JJ.

FLYNN, C. J. This is a petition, under general laws 1938, chapter 445, to establish a lien for materials and labor furnished by petitioner in connection with the building of a wharf on premises owned by the respondent and his mother. After a hearing in the superior court, a decree was entered

denying and dismissing the petition. The cause is here on petitioner's appeal from that decree.

The evidence is largely uncontradicted. It shows that the respondent and his mother, Amelia V. Harrington, are owners, as tenants in common, of certain premises located in the city of Warwick and known as Rocky Point. The owners, by an indenture of lease dated April 17, 1939, demised said premises to Rocky Point Corporation, a Rhode Island corporation, apparently to be operated as an amusement park. This lease was duly recorded in the city of Warwick on April 19, 1939.

In addition to provisions usually found in such a lease, the fourth paragraph contained a covenant by the lessee to spend, on or before January 1, 1941, not less than $25,000 "in restoring, improving and rebuilding the buildings on the demised premises and in erecting such new buildings, structures, improvements and additions on the demised premises as shall be agreed upon in writing between the Lessors and the Lessee and set forth on Schedule B to be attached hereto and made a part hereof". No such schedule B was attached to the lease and none was introduced in evidence. Nowhere in this paragraph nor in any other portion of the lease is any mention made of a wharf; and no provision required the lessee to build or repair any wharf.

Apparently some buildings on the premises were repaired or replaced by the lessee, which also desired to build or repair a wharf. Under G. L. 1938, chap. 112, § 11, such a project required an approval in writing by the chief of the division of harbors and rivers for the state of Rhode Island. At the request of the lessee and solely for such purpose, the owners applied to that division and obtained the necessary approval.

At that time respondent was not an officer, director or stockholder in the lessee corporation and he had no knowledge or notice of the nature or extent of the improvements to the wharf proposed by the lessee, or that the petitioner had contracted with the lessee for any work or materials in connection therewith. The petitioner at no time had any

direct negotiations or contract with the respondent and the latter never acknowledged to petitioner, in writing or otherwise, that his interest would be bound to the extent and for the purposes of petitioner's contract with the lessee.

Admittedly the petitioner knew that Rocky Point Corporation was only a lessee and not the owner of the property. The petitioner's first contract with the lessee, dated May 3, 1939, was in writing. It called for the furnishing by petitioner of certain materials and labor in connection with the building of a pier or wharf at Rocky Point, under petitioner's contract No. 1394, for the lump sum of $2000. On June 12, 1939 the petitioner and lessee entered into a second agreement in writing entitled "Addenda to Contract #1394", whereby additional lumber was to be provided, thus making the total amount of the contract $2559.33, upon which $500 was paid by the lessee before the work was started. The petitioner commenced work about June 5 and performed its contract by June 22, but received no further payments.

The petitioner does not contend that it had a contract, written or oral, directly with the respondent. It contends, however, that the relationship between respondent and Rocky Point Corporation, under the indenture of lease, was more than that of lessor and lessee; that the lessee, by the provisions of that instrument, held the general contract with the respondent, as owner, for the building of the wharf; and that the petitioner was the subcontractor which made its written contract with the Rocky Point Corporation at the request of the owner, thus subjecting the respondent's interest in the premises to a lien under § 1 of chap. 445.

The trial justice found, substantially, that the instrument of lease did not contain any general contract between the respondent and Rocky Point Corporation to build the wharf. We agree with this conclusion. The lease was in the usual form. No mention of a wharf is found in the fourth paragraph or elsewhere therein. While the provisions of that paragraph did not prohibit the lessee from building a wharf, and in that sense permitted it generally, nevertheless no

provision of the lease *required* the lessee to build or repair it. The lessee's refusal or complete failure to build or repair a wharf would not affect or violate any covenant in the lease. Conversely, the respondent as owner could not have compelled the lessee thereunder to build a wharf of any kind.

It would appear from the language of the fourth paragraph that any contemplated building of that kind would have been included in a written schedule B to be attached to the lease. No such schedule was attached nor was it presented in evidence. Since this lease can not be extended lawfully to amount to a general contract between the lessee and the respondent owner to build a wharf, the petitioner could not be considered as a subcontractor thereunder which was entitled to a lien upon that ground.

But the petitioner also contends, if we understand correctly, that it was entitled to its lien, in any event, against the respondent's interest in the land because the latter, as owner, had consented to petitioner's contract with the lessee. For this contention petitioner depends, substantially, on the respondent's application to the division of harbors and rivers for the purpose of obtaining the state's assent to the doing of work on the wharf. On the evidence, this plainly was not a consent to the petitioner's work or contract, which were not disclosed to the respondent; but it was a mere application to obtain for the lessee the state's assent to prospective work on the wharf. Even if such application might be considered as respondent's "assenting to such construction, erection or reparation", it would not be sufficient to bind him as owner unless petitioner also obtained his consent in writing, "acknowledging his estate to be also holden for the payment thereof". See chap. 445, § 2, of the statute.

Under all the circumstances we find no error in the decision of the trial justice.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Russell H. Hawkins,* for petitioner.

*Greenough, Lyman & Cross, Owen P. Reid,* for respondent.